UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

---------------------------------------------------------------x
:
**In re** : Chapter 11
:
**THE COLONIAL BANCGROUP, INC.,** : (Bankr. Case No.  09-32303 (DHW))
:
    Debtor. :
:
---------------------------------------------------------------x
:
:
**THE COLONIAL BANCGROUP, INC.,** :
:
    Plaintiff, :
:
v. : Case No.  2:10-cv-00410-MHT-WC
: (Adv. Proc. No. 10-03018)
**FEDERAL DEPOSIT INSURANCE** :
**CORPORATION, AS RECEIVER FOR** :
**COLONIAL BANK,** :
:
    Defendant. :
:
---------------------------------------------------------------x

**AMENDED COMPLAINT SEEKING A
DECLARATORY JUDGMENT REGARDING OWNERSHIP OF
CERTAIN PROPERTY UNDER SECTION 541 OF THE BANKRUPTCY CODE**

The Colonial BancGroup, Inc., debtor and debtor in possession herein (the "Plaintiff"), by and through its undersigned counsel, files this Amended Complaint Seeking a Declaratory Judgment Regarding Ownership of Certain Property Under Section 541 of the Bankruptcy Code (the "Complaint"), in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), against the Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "Defendant"), and in support hereof, states and shows the following:

**Bankruptcy Filing and Case Background**

1. The Plaintiff is a corporation formed under the laws of the State of Delaware and, prior to the Petition Date (as defined below), was headquartered and conducted business at 100 Colonial Bank Boulevard, Montgomery, Alabama 36117, and owned Colonial Bank and certain non-banking subsidiaries.

2. The Defendant is sued in its capacity as the receiver for Colonial Bank.

**Jurisdiction and Venue**

3. This Court has jurisdiction over this adversary proceeding and the parties pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Factual Background**

4. On August 14, 2009 (the "Receivership Date"), Colonial Bank was closed by the Alabama State Banking Department and the Defendant was appointed as receiver for Colonial Bank.

5. On the Receivership Date, the Defendant asserted dominion and control over not only the books and records of Colonial Bank but also the books and records of the Plaintiff and certain of the Plaintiff's direct and indirect subsidiaries (collectively, the "Books and Records").

6. The Defendant sold and assigned substantially all of the assets of Colonial Bank to Branch Banking and Trust Company ("BB&T") pursuant to a Purchase and Assumption Agreement dated as of August 14, 2009, among the Federal Deposit Insurance Corporation (in both its corporate and receiver capacities) and BB&T (the "P&A Agreement").

7. As a part of the transaction under the P&A Agreement, the Defendant also transferred to BB&T possession of certain of the Books and Records. Thereafter, the Defendant undertook to obstruct and influence access to and the disposition of such Books and Records through the exercise of certain

alleged contractual rights under the P&A Agreement, without the Plaintiff's consent and in violation of the Plaintiff's rights.

8.      On August 25, 2009 (the "Petition Date"), the Plaintiff filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Alabama, Northern Division (the "Bankruptcy Court").  The Plaintiff continues to manage its business affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**Tax Refunds**

9.      The Plaintiff is the common parent of numerous subsidiaries, including Colonial Bank and its subsidiaries, within the meaning of Section 1504(a) of the Internal Revenue Code.

10.     The Plaintiff and Colonial Bank, and certain other direct and indirect subsidiaries of the Plaintiff and Colonial Bank, have established and operated in the ordinary course of business pursuant to the terms of a certain intercorporate tax allocation arrangement (the "Tax Sharing Agreement").

11.     On information and belief, pursuant to the Tax Sharing Agreement, the Plaintiff would prepare and file with the Internal Revenue Service each federal income tax return (together with any other returns, documents or statements required to be filed therewith) for the determination of the federal income tax liability of the consolidated tax group.

12.     On information and belief, all federal income taxes were paid directly by the Plaintiff on behalf of the consolidated tax group, which included Colonial Bank.

13.     On information and belief, certain state and local taxes were paid directly by the Plaintiff on behalf of the consolidated tax group, which included Colonial Bank.

14.     As a result of the Plaintiff's payment of certain federal, state and local taxes for the consolidated tax group, the Plaintiff is, or will be, entitled to tax refunds in amounts to be determined after obtaining access and opportunity for review of records relating to the Plaintiff, Colonial Bank and its subsidiaries (the "Tax Refunds").

15. All Tax Refunds are payable to the Plaintiff, regardless of whether such refunds are on account of taxes paid or losses incurred by Colonial Bank or its subsidiaries or any of the Plaintiff's other subsidiaries.

16. Pursuant to the Tax Sharing Agreement, the Plaintiff's sole obligation to each other member of the consolidated tax group with respect to Tax Refunds is to remit, as a function of a debtor/creditor relationship that existed by virtue of the Tax Sharing Agreement and the course of dealing among the parties, an amount equal to such consolidated tax group member's right to remittances under the Tax Sharing Agreement.

17. The Tax Sharing Agreement does not create an express trust running from the Plaintiff to the other members of the consolidated tax group and no grounds exist for implying the existence of such a trust.

18. Colonial Bank and its subsidiaries are mere unsecured claimants with respect to any portion of the Tax Refunds that are due them (if any) from the Plaintiff, but ownership of the entirety of the Tax Refunds is vested solely in the Plaintiff.

19. Pursuant to Section 541 of the Bankruptcy Code, all Tax Refunds are property of the Plaintiff's Chapter 11 estate.

**Insurance Proceeds**

20. The Plaintiff is the named insured under and has an ownership interest in a variety of insurance policies, including, but not limited to, the following: the Federal Insurance Company's Financial Institution Portfolio Policy (No. 7144-2614) (and any excess policies, including two excess policies issued by National Union Fire Insurance Company (policy no. 01-384-68-10) and Allied World Assurance Company (policy no. C01937/001) (collectively referred to as the "D&O Policies"); and the Federal Insurance Company Financial Institution Bond: Form A and Form B Policy Nos. 81158390 DFI; 81910594 DFI and Financial Institution Electronic and Computer Crime Policy No. 81260198 DFI ("Fidelity Policies"; the D&O Policies and Fidelity Policies are collectively referred to as the "Insurance

Policies"). The Plaintiff is informed, believes and therefore avers that the Defendant is in possession of copies of each of the Insurance Policies.

21. The D&O Policies and Fidelity Policies name the Plaintiff and its subsidiaries, including, without limitation, Colonial Bank and its subsidiaries, as insured persons (collectively, the "Insureds").

22. Despite the fact that there are multiple Insureds covered by Insurance Policies, the insurance proceeds are payable solely to and are property of the Plaintiff's estate.

23. Under the Fidelity Policies, the Plaintiff has the sole authority to act on behalf of each Insured.

24. Each of the Insureds is conclusively deemed under the Fidelity Policies to have no direct beneficiary interest in or any right of action under the Fidelity Policies.

25. All losses and other payments, if any, that are at any time payable under the Fidelity Policies are payable solely to the Plaintiff without regard to the Plaintiff's obligations to any of the other Insureds.

26. On August 10, 2009, David B. Byrne, Jr., as counsel for the Plaintiff, gave written notice of circumstances giving rise to claims under the Fidelity Policies, which notice was subsequently supplemented on September 21 and October 13, 2009.

27. On or about February 1, 2010, the Plaintiff submitted a proof of loss asserting a claim for damages under the Fidelity Policies in excess of the policy limits.

28. The proof of loss and claim under the Fidelity Policies remain pending as of the filing of this adversary proceeding.

29. Any payments under the Fidelity Policies are to be made solely to the Plaintiff and, under the terms of the Fidelity Policies, are property of the Plaintiff's estate.

30. Prior to the Petition Date, derivative lawsuits were filed in which claims on behalf of the Plaintiff are asserted against officers and directors of the Plaintiff, which lawsuits seek damages in excess of the coverage limits under the D&O Policies.

31. On December 3, 2009, the Plaintiff submitted to the insurance companies under the D&O Policies a notice of circumstance of claims in excess of the policy limits of the D&O Policies.

32. Such claims remain pending as of the filing of this adversary proceeding.

33. Pursuant to Section 541 of the Bankruptcy Code, any payments or other proceeds arising out of the aforementioned claims under either the D&O Policies or Fidelity Policies (the "Insurance Proceeds") constitute property of the Plaintiff's Chapter 11 estate.

**COUNT I**

**Declaratory Judgment Pursuant to Section 541
of the Bankruptcy Code Relating to Tax Refunds**

34. The Plaintiff repeats and realleges the averments in paragraphs 1 through 33 of this Complaint as if restated verbatim in this paragraph.

35. The filing of the Plaintiff's bankruptcy petition commenced the underlying Chapter 11 case and created the bankruptcy estate under Section 541 of the Bankruptcy Code.

36. The Plaintiff's Chapter 11 estate is comprised of all legal and equitable interests of the Plaintiff in property as of the Petition Date pursuant to Section 541 of the Bankruptcy Code.

37. The Defendant has asserted in pleadings filed with the Court, including its proof of claim, and/or in statements made in open Court that it owns and/or has superior rights to all or a substantial part of the Tax Refunds, all in derogation of the true ownership rights and interests of the Plaintiff.

38. The Plaintiff is entitled to receive any and all Tax Refunds related to any tax returns filed, or taxes paid, by the Plaintiff for or on behalf of the consolidated tax group.

39. The Plaintiff does not hold the Tax Refunds in trust for Colonial Bank or other members of the consolidated tax group.

40. As of the Petition Date, the Plaintiff held both a legal and equitable interest in any and all Tax Refunds, whether paid or received on or after the Petition Date.

41.     In addition, the various exceptions to Section 541(a) of the Bankruptcy Code (as outlined in Sections 541(b), 541(c)(2) and 541(d) of the Bankruptcy Code) are not applicable to the Tax Refunds or any issues raised in this adversary proceeding.

42.     Accordingly, pursuant to Section 541(a) of the Bankruptcy Code, the Tax Refunds are property of the Plaintiff's Chapter 11 estate.

WHEREFORE, the Plaintiff respectfully requests that (1) judgment be entered in favor of the Plaintiff under Count I of this Complaint, (2) the Court declare that the Tax Refunds are property of the estate, and (3) the Court grant the Plaintiff such other and further relief as is just and proper under the circumstances.

### COUNT II

### Declaratory Judgment Pursuant to Section 541 of the Bankruptcy Code Relating to Insurance Proceeds

43.     The Plaintiff repeats and realleges the averments in paragraphs 1 through 42 of this Complaint as if restated verbatim in this paragraph.

44.     The filing of the Plaintiff's bankruptcy petition commenced the underlying Chapter 11 case and created the bankruptcy estate under Section 541 of the Bankruptcy Code.

45.     The Plaintiff's Chapter 11 estate is comprised of all legal and equitable interests of the Plaintiff in property as of the Petition Date pursuant to Section 541 of the Bankruptcy Code.

46.     The Defendant has asserted either in pleadings filed with the Court or in its dealings with the Plaintiff that it owns and/or has prior claims to the Insurance Proceeds, all in derogation of the ownership rights and interests of the Plaintiff.

47.     The Plaintiff is entitled to receive all Insurance Proceeds of the Insurance Policies to the exclusion of all other Insureds.

48.     Accordingly, the Plaintiff held both a legal and equitable interest in the Insurance Proceeds as of the Petition Date.

49. In addition, the various exceptions to Section 541(a) of the Bankruptcy Code (as outlined in Sections 541(b), 541(c)(2) and 541(d) of the Bankruptcy Code) are not applicable to the Insurance Proceeds or any issues raised in this adversary proceeding.

50. Accordingly, pursuant to Section 541(a) of the Bankruptcy Code, the Insurance Proceeds are property of the Plaintiff's Chapter 11 estate.

WHEREFORE, the Plaintiff respectfully requests that (1) judgment be entered in favor of the Plaintiff under Count II of this Complaint, (2) the Court declare that the Insurance Proceeds are property of the estate, and (3) the Court grant the Plaintiff such other and further relief as is just and proper under the circumstances.

Dated:  May 28, 2010

   /s/ *Rufus T. Dorsey, IV*   
One of the Attorneys for Plaintiff,
The Colonial BancGroup, Inc.

C. Edward Dobbs, Esq.
(Ga. Bar No. 223450)
Rufus T. Dorsey, IV, Esq.
(Ga. Bar No. 226705)
PARKER, HUDSON, RAINER & DOBBS LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, Georgia 30303
(404) 523-5300
(404) 522-8409
edobbs@phrd.com
rdorsey@phrd.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on May 28, 2010, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and served by first class mail on the same day upon those counsel or parties listed below:

Jeremy R. Johnson, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Thomas R. Califano, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

*/s/ Rufus T. Dorsey, IV*
One of the Attorneys for Plaintiff,
The Colonial BancGroup, Inc.