UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

------------------------------------------------------------x
                                           :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| THE COLONIAL BANCGROUP, INC., | : | (Bankr. Case No. 09-32303 (DHW)) |
| | : | |
| Debtor. | : | |
| ------------------------------------------x | : | |
| | : | |
| THE COLONIAL BANCGROUP, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:10-cv-00410-MHT-WC |
| | : | (Adv. Proc. No. 10-03018) |
| FEDERAL DEPOSIT INSURANCE | : | |
| CORPORATION, as receiver for | : | |
| Colonial Bank, | : | |
| | : | |
| Defendant. | : | |
| ------------------------------------------x | | |

**PLAINTIFF'S RESPONSE TO MOTION OF THE**
**FDIC-RECEIVER TO DISMISS THE AMENDED COMPLAINT**

THE COLONIAL BANCGROUP, INC., as debtor and debtor in possession herein ("BancGroup"), hereby responds to the *Motion of the FDIC-Receiver to Dismiss the Amended Complaint* (the "Motion") [Doc. No. 21] and the accompanying *Memorandum of Law in Support of the Motion of the FDIC-Receiver to Dismiss the Amended Complaint* (the "Brief") [Doc. No. 22] filed with this Court by the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for Colonial Bank (in such capacity, the "FDIC-Receiver"), on June 25, 2010.

**Procedural Overview**

This matter is before the Court on the FDIC-Receiver's Motion to dismiss BancGroup's Amended Complaint (the "Amended Complaint"). The original Complaint was filed on March 4, 2010, in the

United States Bankruptcy Court for the Middle District of Alabama, Northern Division (the "Bankruptcy Court"), seeking a determination under Section 541 of the Bankruptcy Code that any tax refunds attributable to BancGroup's consolidated tax returns and any proceeds of BancGroup's insurance policies constitute property of BancGroup's bankruptcy estate.[1]

On March 31, 2010, the FDIC-Receiver filed a motion to withdraw reference with respect to the Complaint. At the same time, the FDIC-Receiver filed a motion to withdraw reference with respect to BancGroup's objection to the FDIC-Receiver's proof of claim in BancGroup's Chapter 11 bankruptcy case (the "Claim Objection") and an adversary proceeding involving the avoidance of alleged obligations of BancGroup (the "Fraudulent Obligation Action").[2]

With the consent of the parties, this Court granted the FDIC-Receiver's withdrawal motions as to this declaratory judgment action, the Claim Objection and the Fraudulent Obligation Action. The Court later stayed the proceedings in the Fraudulent Obligation Action.

On May 28, 2010, BancGroup amended the Complaint in this Court [Doc. No. 14]. BancGroup, on the same day, also amended and restated the Claim Objection. In its Amended Complaint, BancGroup renewed its request for a determination under Section 541 of the Bankruptcy Code that any tax refunds relating to BancGroup's consolidated tax returns and any proceeds of BancGroup's insurance policies constitute property of BancGroup's bankruptcy estate.

The FDIC-Receiver responded to the Amended Complaint on June 25, 2010, by filing the Motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint for lack of subject matter jurisdiction. The FDIC-Receiver argues in the Motion that the Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989

---

[1] As originally filed, the Complaint contained a third count seeking a determination that certain personal property constituted property of BancGroup's bankruptcy estate. BancGroup has dropped this count from its Amended Complaint, without prejudice.

[2] The FDIC-Receiver also filed a motion to withdraw reference with respect to an additional adversary proceeding pending in the Bankruptcy Court that is not relevant to the current dispute before the Court. With the consent of the parties, the Court denied the FDIC-Receiver's withdrawal motion as to this adversary proceeding.

("FIRREA"), deprives both this Court and the Bankruptcy Court of subject matter jurisdiction. According to the FDIC-Receiver, the "only permissible forum for the resolution of the disputes" implicated in the Amended Complaint is through BancGroup's action currently pending before this Court, styled *The Colonial BancGroup, Inc. v. F.D.I.C.*, Case No. 2:10-cv-00198 (MHT) (M.D. Ala.), which contests the FDIC-Receiver's disallowance of BancGroup's claim in the receivership of Colonial Bank (the "FIRREA Action"). *See* Brief, pgs. 1-2.

In responding to the amended and restated Claim Objection, the FDIC-Receiver requested that the Court either stay the Claim Objection or require that it be coordinated with the FIRREA Action.[3] On July 7, 2010, the Court denied the FDIC-Receiver's request for a stay of the Claim Objection [Doc. No. 25].

**Summary of BancGroup's Response**

The issue presented by the FDIC-Receiver's Motion is whether the claims administration procedures codified in FIRREA preempt, and divest subject matter jurisdiction granted under, the Bankruptcy Code for this Court to hear and determine the relief requested in the Amended Complaint. The Amended Complaint seeks a determination whether certain assets (tax refund claims and certain insurance claims), claimed by the FDIC-Receiver in its proof of claim filed in the Chapter 11 case, constitute property of BancGroup's estate under Section 541 of the Bankruptcy Code.

FIRREA does not preempt the original and exclusive jurisdiction granted under the Bankruptcy Code to this Court (and, by reference, the Bankruptcy Court) to determine what constitutes property of a bankruptcy estate under Section 541 of the Bankruptcy Code. The FDIC-Receiver fails to cite a single case to support its argument that FIRREA strips bankruptcy and district courts of subject matter

---

[3] In this response, the FDIC-Receiver even appeared to argue that BancGroup's objection to the FDIC-Receiver's proof of claim submitted in its Chapter 11 bankruptcy case violated FIRREA's jurisdictional provisions. *See Response of the FDIC-Receiver to Debtor's Amended and Restated Objection to Bankruptcy Proof of Claim*, 2:10-cv-00409 (MHT) (M.D. Ala.) [Doc. No. 15], p. 10 ("FIRREA limits subject matter jurisdiction over such disputes to actions that have been commenced in accordance with the requirements of 12 U.S.C. § 1821(d). BancGroup's objection, which substantially overlaps the complaint in its FIRREA Action, violates this exclusive jurisdiction.").

jurisdiction under the Bankruptcy Code when conflicting claims to assets are made by the FDIC, as a receiver, and a debtor in bankruptcy.

The FDIC-Receiver's argument is based on the faulty premise that this Court lacks jurisdiction to make a determination of property rights under the Bankruptcy Code and that the FDIC-Receiver, by mere declaration of a competing interest in property, shifts from the bankruptcy court to the FIRREA claims administration process the resolution of the dispute. FIRREA does not confer such extraordinary power upon the FDIC-Receiver, nor does it take away subject matter jurisdiction from either this Court or the Bankruptcy Court.

Federal courts have consistently recognized that a party may raise affirmative defenses to claims asserted against such parties by the FDIC as receiver, including affirmative defenses (and counterclaims in the nature of affirmative defenses) to bankruptcy proofs of claim filed by the FDIC as receiver. The FDIC-Receiver filed with the Bankruptcy Court a proof of claim in BancGroup's Chapter 11 case on November 30, 2009, and an amended proof of claim on February 19, 2010. In its proofs of claim, the FDIC-Receiver asserted entitlement to the very tax refunds and insurance proceeds that are the subject of the Amended Complaint. Both the Claim Objection and the Amended Complaint dispute the FDIC-Receiver's entitlement to those assets and sought resolution by the Bankruptcy Court and, after withdrawal of reference, this Court. Having invoked the Bankruptcy Court's jurisdiction in filing its proof of claim, the FDIC-Receiver should not now be heard to complain that the allegations in its proof of claim will be tested by this Court after withdrawal of reference.

<strong><u>FDIC-Receiver's Arguments Addressed</u></strong>

1. **Property of the Bankruptcy Estate.**

The commencement of a bankruptcy case creates "an estate." 11 U.S.C. § 541(a). The estate is comprised of all interests of the debtor in any property, "wherever located and by whomever held," with certain exceptions that are not relevant to this controversy. <u>Id.</u>

As will be discussed below, a district court (and, by reference, the bankruptcy court) has "exclusive jurisdiction… of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). As will also be discussed below, the automatic stay under Section 362(a) of the Bankruptcy Code protects the estate's interest in such property against adverse claims of creditors.

2.      **Exclusive Jurisdiction of Bankruptcy Court.**

Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. *See* In re Mirant Corp., 378 F.3d 511 (5th Cir. 2004), *on remand* 318 B.R. 100 (N.D. Tex. 2004), *aff'd*, 197 Fed. Appx. 285 (5th Cir. 2006). Federal district courts have original and exclusive jurisdiction over all cases that arise under the Bankruptcy Code, and original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334; In re Porges, 44 F.3d 159, 163 n.3 (2d Cir. 1995). A district courts' original jurisdiction over bankruptcy cases exists "notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. § 1334(b).

The district court in which a bankruptcy case is commenced obtains exclusive *in rem* jurisdiction over all of the property in the estate pursuant to Section 541 of the Bankruptcy Code. 28 U.S.C. § 1334(e); In re Crown Vantage, Inc., 421 F.3d 963, 971 (9th Cir. 2005) (*quoting* In re Simon, 153 F.3d 991 (9th Cir. 1998), *cert. denied*, Hong Kong and Shanghai Banking Corp., Ltd. v. Simon, 525 U.S. 1141 (1999)). The bankruptcy court and the district court, acting as one unit, have exclusive jurisdiction over all property, wherever located, of the debtor and property of the debtor's estate. In re Gandy, 299 F.3d 489, 499 (5th Cir. 2002); In re Alabama Fuel Sales Co., 45 B.R. 365, 368 (N.D. Ala. 1985). Bankruptcy jurisdiction is designed to provide a single forum to deal with all claims to the bankrupt's assets. Green v. Massachusetts Cas. Ins. Co., 269 B.R. 782, 787 (N.D. Ill. 2001), *aff'd*, In re Green, 42 Fed. Appx. 815

(7th Cir. 2002).[4] It is well established that bankruptcy jurisdiction under the Bankruptcy Code is to be construed as broadly as possible within constitutional restraints. *See* In re Ben Cooper, Inc., 896 F.2d 1394, 1398 (2d Cir. 1990), *cert. granted and judgment vacated by*, Insurance Co. of the State of Pennsylvania v. Ben Cooper, Inc., 497 U.S. 1023 (1990), *on remand* 924 F.2d 36 (2d Cir. 1991), *cert. denied*, 500 U.S. 928 (1991), *opinion reinstated*, 924 F.2d 36 (2d Cir. 1991), *cert. denied*, 500 U.S. 928 (1991).

It is within the bankruptcy court's traditional jurisdiction to determine all matters relating to property in which the debtor has any interest. In re Texaco Inc., 109 B.R. 609, 610 (S.D.N.Y. 1989); Ohio Farmers Ins. Co. v. Hughes-Bechtol, Inc., 249 B.R. 735, 740-41 (S.D. Ohio 1998), *aff'd in part, rev'd in part*, In re Hughes-Bechtol, Inc., 225 F.3d 659 (6th Cir. 2000). That jurisdiction includes the authority to determine whether property is, or is not, an asset of the debtor's estate and thereby to determine the existence of jurisdiction over the asset. *See, e.g.*, In re Purcell, 150 B.R. 111 (D. Vt. 1993) (discussed below); All Season's Kitchen, Inc. v. Federal Deposit Ins. Corp. (In re All Season's Kitchen, Inc.), 145 B.R. 391 (Bankr. D. Vt. 1992) (in determining whether 12 U.S.C. § 1821(d)(13)(D) divests court of jurisdiction over action seeking determination of property rights, court must first determine whether an asset of FDIC is in fact at issue before determination can be made of jurisdiction); Ellwanger v. Budsberg, 140 B.R. 891, 896 (Bankr. W.D. Wash. 1992) (bankruptcy court "has jurisdiction to determine its jurisdiction"). *See also*, Ga. Dep't of Revenue v. Webster (In re Sec. Bank Corp), 2010 U.S. Dist. LEXIS 58401 (M.D. Ga. June 14, 2010) (denying FDIC's motion to withdraw reference of an adversary proceeding to determine entitlement, as between Chapter 7 trustee and FDIC, disputed tax refund claims, district court observed that "essential issue" was whether tax refunds were property of debtor's estate under Section 541 of Bankruptcy Code and bankruptcy court would need to analyze tax

---

[4] Under the current bankruptcy scheme, bankruptcy courts do not exercise any original jurisdiction as independent courts. Instead, they hear and decide cases arising out of title 11 that are referred to them by district courts. 28 U.S.C. § 157; In re Volpert, 186 B.R. 240, 244 (N.D. Ill. 1995), *aff'd*, 110 F.3d 494 (7th Cir. 1997).

sharing agreement to determine whether refunds were property of debtor's estate, noting that bankruptcy courts routinely determine what is and what is not property of an estate and determination of what is estate property is a "fundamental issue affecting administration of bankruptcy case"); Hassett v. FDIC (In re CIS CORP.), 140 B.R. 351 (S.D.N.Y 1992) (bankruptcy court has jurisdiction to determine whether FIRREA bars trustee suit to determine validity of FDIC lien).

In the Purcell case, for example, the FDIC argued that, by virtue of FIRREA (12 U.S.C. § 1821(d)(13)(D)), the bankruptcy court did not have subject matter jurisdiction to consider a debtor's action to set aside a lien claimed by the FDIC on estate property.  Rejecting the FDIC's argument, the district court ruled that the purported lien was not perfected and therefore was not a "bona fide asset" of the failed bank.  Purcell, 150 B.R. at 114.  In so ruling, the court noted that it had jurisdiction to determine whether it had jurisdiction over the avoidance action by making a threshold factual finding regarding the purported asset of the FDIC as receiver and whether FIRREA was applicable.  Id.[5]  *See also*, In re Visioneering Constr., 661 F.2d 119, 122 (9th Cir. 1981) (in determining whether to exercise jurisdiction, a court may have to determine certain facts).

It is, therefore, clearly permissible for this Court, in assessing whether it has subject matter jurisdiction, to determine whether the assets claimed by the FDIC-Receiver in its proof of claim in BancGroup's Chapter 11 case (and asserted by BancGroup to be owned by it in its Claim Objection and Amended Complaint) constitute property of the estate under Section 541(a).  There is nothing in FIRREA, or to BancGroup's knowledge in any decisional law construing it, that FIRREA trumps the exclusive jurisdiction of a bankruptcy court, exempts the FDIC as a receiver from compliance with

---

[5] Similarly illustrative of the fact that FIRREA does not divest courts of the ability to determine the threshold matter of their own subject matter jurisdiction is the case of Washington Bancorp. v. FDIC (In re Washington Bancorp.), 1996 WL 148533 (D.D.C. Mar. 19, 1996).  There, a district court, following withdrawal of reference with respect to an adversary proceeding in bankruptcy, was confronted with the FDIC's motion under 12 U.S.C. § 1821(d)(13)(D) to dismiss for lack of subject matter jurisdiction the debtor's complaint for determination whether a claim asserted by the FDIC against the debtor was barred by a settlement agreement.  The court made a threshold determination whether the purported claim was an "asset of a failed depository institution" within the meaning of that section and concluded that it was not.  1996 WL 148533, at *4.

bankruptcy law and procedures, and delegates all issues within the province of bankruptcy courts to resolution through the FIRREA administrative claims process.

### 3. Automatic Stay Applicable to FDIC.

Upon commencement of a bankruptcy case, an automatic stay arises under Section 362(a) of the Bankruptcy Code. The automatic stay generally enjoins any actions by a third party against a debtor in bankruptcy or with respect to any estate property. 11 U.S.C. § 362(a). The automatic stay has consistently been held to apply to the FDIC in its receivership capacity, notwithstanding the anti-injunction provision contained in 12 U.S.C. § 1821(j). *See, e.g.*, Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113-14 (1st Cir. 1994) ("Because the automatic stay is exactly what the name implies -- 'automatic' -- it operates without the necessity for judicial intervention. Consequently, the stay's curtailment of the FDIC's power does not run afoul of FIRREA's anti-injunction provision, which only prohibits '*court…* action... to restrain or affect the exercise of powers or function of the [FDIC] as a… receiver.'"); In re Colonial Realty Co., 980 F.2d 125, 137 (2d Cir. 1992) (concluding that the 12 U.S.C. § 1821(j) "ban upon '*court…* action… to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver [emphasis added]' does not inhibit the operation of the automatic *statutory* stay imposed by § 362(a)") (emphasis and brackets in original). *Accord*, Gross v. Bell Sav. Bank, 974 F.2d 403, 407 (3d Cir. 1992); In re Lane, 136 B.R. 319, 320-321 (D. Mass. 1992).[6]

---

[6] Section 362(b)(4) of the Bankruptcy Code provides that the automatic stay does not "reach proceedings undertaken to enforce a 'governmental unit's police or regulatory power.'" *See* Sunshine, 33 F.3d at 114 n.8 (1st Cir. 1994). The legislative history of Section 362(b)(4), however, makes clear that the exception contained therein was intended to be given a "narrow construction" and not to apply to "actions by a governmental unit to advance its own 'pecuniary interest.'" In re Benal Cavar, 283 B.R. 514, 530 (Bankr. N.D. Ill. 2002). *Accord*, In re NextWave Personal Communs., Inc., 244 B.R. 253, 273-74 (Bankr. S.D.N.Y. 2000). Moreover, the exception does not apply unless the governmental unit brings the action in its capacity as a regulator or a private party acting as a private attorney general. In re Birchall, 2007 WL 1992089, at *7 (Bankr. D. Mass. July 3, 2007) (*citing* Cournoyer v. Town of Lincoln, 790 F.2d 971, 974 (1st Cir. 1986) *and* Javens v. City of Hazel Park (In re Javens), 107 F.3d 359 (6th Cir. 1997)).

Although the phrase "police or regulatory power" is not defined in the Bankruptcy Code, it has been interpreted to refer to the "enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court." City & County of San Francisco v. PG&E Corp., 433 F.3d 1115, 1123 (9th Cir. 2006).

(*Footnote continued…*)

It is well settled, therefore, that the automatic stay protects estate property of BancGroup;[7] the FDIC-Receiver is subject to the automatic stay; and both this Court and the Bankruptcy Court as a unit have original and exclusive jurisdiction over BancGroup's assets. What remains for consideration is whether the mere assertion by the FDIC-Receiver of a conflicting claim to property also claimed by BancGroup divests this Court of subject matter jurisdiction under the Bankruptcy Code and relegates the dispute to FIRREA's administrative claims process.

    **4.**    **FIRREA Administrative Claims Process is Inapplicable to this Matter.**

    **(a)**    **Overview.** Section 1821(d)(13)(D)(i) of Title 12 of the United States Code, entitled "Limitation on Judicial Review," provides as follows:

> Except as otherwise provided in this subjection, no court shall have jurisdiction over --
>
> (i) Any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver…

---

Courts have determined that the FDIC, acting in its capacity as a receiver, is not exercising "regulatory powers" that would exempt it from the automatic stay. <u>Sunshine</u>, 33 F.3d at 114 n.8 (*citing* <u>Howell v. FDIC</u>, 986 F.2d 569, 574 (1st Cir. 1993)). Thus, for example, the Second Circuit in <u>In re Colonial Realty</u>, found that the FDIC did not have powers to override substantive and procedural laws in bankruptcy cases simply because enforcement of those laws restricted the FDIC's powers with respect to assets in which it had an interest as successor to a failed bank. 980 F.2d at 137 ("In effect then, FDIC asks this court to treat FDIC as having a power that overrides both substantive and procedural law governing bankruptcy proceedings, simply because enforcement of those bodies of law places some constraints on FDIC's power to foreclose under mortgages in which it has interests as successor to a failed bank. *Such an extraordinary interpretation of the manifested intent of Congress cannot be sustained.*") (emphasis added).

[7] The FDIC-Receiver has acknowledged as much by filing a motion for relief from the automatic stay in the Chapter 11 case in order to assert purported setoff rights with respect to BancGroup's bank accounts that were transferred by the FDIC-Receiver to Branch Banking & Trust Company. The FDIC-Receiver's stay relief motion has been briefed and tried before the Bankruptcy Court and BancGroup anticipates that a ruling will be forthcoming in the near future.

The statute has been interpreted to require that persons with "claims"[8] against the FDIC as receiver first exhaust their remedies through the administrative claims process set forth in FIRREA before prosecuting them in federal court. See Meliezer v. RTC, 952 F.2d 879, 882 (5th Cir. 1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required."). In the Amended Complaint, however, BancGroup does not seek to enforce any right to payment from the receivership estate and therefore cannot be considered to be asserting any "claim."

The statute also bars any action that seeks a "determination of rights with respect to" assets of the failed financial institution for which the FDIC acts as receiver. It is this portion of the statute that forms the basis for the Motion of the FDIC-Receiver to dismiss the Amended Complaint for lack of subject matter jurisdiction and gives rise to a conflict with the Bankruptcy Code. Neither statute expressly states that it prevails over the other. Accordingly, courts confronted with this conflict have endeavored to harmonize the statutes in an effort to give effect to both to the greatest extent possible.

**(b)     The Creditor/Debtor Distinction.**  One line of cases reasons that FIRREA only applies to "claims" against the FDIC as receiver and not to challenges incident to the FDIC's claims against its "debtors." See Parker N. Am. Corp. v. RTC (In re Parker N. Am. Corp.), 24 F.3d 1145, 1156 (9th Cir. Cal. 1994) (bankruptcy court had subject matter jurisdiction over debtor's preference action asserted as affirmative defense to RTC's proof of claim, as a preference action is not susceptible of resolution through FIRREA claims procedure because it does not constitute a claim by a "creditor" against the RTC); Purcell, 150 B.R. 111 (adversary proceeding brought by Chapter 11 debtor to avoid judgment lien held by FDIC that was unperfected was not a claim asserted by a "creditor"; and even if limitations on judicial review under FIRREA applied to claims by "debtors," action to avoid FDIC's

---

[8] A "claim" has been defined as "essentially an action which asserts a right to payment." National Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 394 (3d Cir. 1994) (*cited with approval in* Washington Bancorp. v. FDIC (In re Washington Bancorp.), 1996 WL 148533, at *9 (D.D.C. Mar. 19, 1996)). In the Amended Complaint, BancGroup does not seek any affirmative recovery from the receivership estate and therefore does not assert any "claim."

unperfected lien did not involve a "bona fide asset" of the failed bank and therefore FIRREA did not deprive the bankruptcy court of subject matter jurisdiction);[9] In re Continental Fin. Resources, Inc., 154 B.R. 385 (D. Mass. 1993) (a complaint to determine validity of lien claimed by FDIC on debtor's assets was not a "claim" within FIRREA and thus compliance with FIRREA administrative claims process not required before bringing complaint in bankruptcy court). *See also*, McCarthy v. FDIC, 348 F.3d 1075 (9th Cir. 2003) (recognizing creditor/debtor distinction for FIRREA applicability); Sharpe v. FDIC, 126 F.3d 1147, 1156 (9th Cir. 1997) (same); In re First City Asset Servicing Co., 158 B.R. 78, 82 (Bankr. N.D. Tex. 1993) (noting that forcing "bankruptcy debtors to go through the FIRREA claims process… would threaten the operation of the bankruptcy system"). The language of FIRREA, according to these courts, repeatedly refers to the FDIC's "creditors" asserting claims but omits any reference to the FDIC's "debtors," with the inescapable inference being that FIRREA was intended to apply only to the claims of creditors.[10] Following the logic of these cases, most of which involve bankruptcy cases, BancGroup's Claim Objection (in which the FDIC-Receiver's claim of ownership of the disputed assets is contested)

---

[9] The Purcell court noted that:

> The FDIC responds that the judgment lien is an asset, albeit disputed, of the receiver for the purposes of the administrative claims process. However, this argument fails to distinguish between a cause of action where there is no question that the assets are bona fide assets of the bank and a cause of action where the issue is whether or not the alleged asset is in fact a bona fide asset of the bank. The former, which involves a party's claim for, or rights in, the bona fide assets of a bank, is the type of action that the FDIC is referring to and the type it cites in support of its argument. The provisions of FIRREA clearly apply to such actions. The latter, however, is Purcell's type of action and as we stated above, the Bankruptcy Court has jurisdiction to determine whether or not the alleged asset is in fact a bona fide asset of the bank.

150 B.R. at 115.

[10] A House Report documenting the legislative history of FIRREA states that "the bill establishes a claims procedure with specific deadlines for *creditors* and for the FDIC, to be followed in cases where the FDIC has been appointed receiver." H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 331, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 127 (emphasis added). The expressed purpose of enacting FIRREA was "to dispose of the bulk of *claims against* failed financial institutions expeditiously and fairly." H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 419, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 215 (emphasis added). Moreover, Congress intended, through FIRREA, to provide "a clear set of guidelines for claimants and for the FDIC" in response to "the constitutional and statutory concerns . . . outlined by the Supreme Court in *Coit[.]*" H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 214-25.

and the Amended Complaint (seeking a determination of BancGroup's property interests) are not "claims" within the meaning of FIRREA and are asserted in response to the FDIC-Receiver's claim of ownership.

Another line of cases rejects the creditor/debtor analysis. *See, e.g.*, Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735 (6th Cir. 2005) (rejecting creditor/debtor distinction and holding that avoidance action commenced against bank *prior* to FDIC receivership was not subject to FIRREA administrative claims process, particularly since FDIC did not intervene and did not request a stay of the action after its appointment as receiver and allowed matter to proceed to final judgment); Tri-State Hotels v. FDIC, 79 F.3d 707, 714 (8th Cir. 1996) (in non-bankruptcy context, rejecting creditor/debtor distinction and stating that the court had "no need in this case to decide the applicability of FIRREA to bankruptcy cases");  Freeman v. FDIC, 56 F.3d 1394, 1401-02 (D.C. Cir. 1995) (in non-bankruptcy context, ruling that homeowner could neither enjoin FDIC's mortgage foreclosure in district court nor rescind the underlying loan agreement as a result of FIRREA statutory bar);[11] National Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 392 (3d Cir. 1994) (in non-bankruptcy context, ruling FIRREA barred district court declaratory judgment action regarding insurance coverage, but did not bar insurance company from raising affirmative defenses to RTC counterclaim).

All of the cases cited above that have rejected the creditor/debtor distinction, other than the Sixth Circuit's decision in Lewis, did not involve the assertion of a bankruptcy cause of action or defense, and the Lewis decision is readily distinguishable.  The Lewis court simply held that the applicability of the FIRREA statute was to be determined at the time that the bankruptcy avoidance action was filed against the bank and not at a later date when the FDIC was appointed as receiver for the bank.  Although language in the opinion can be construed to say that the avoidance action would have been barred under

---

[11]   The Freeman court noted that there were good reasons offered in those cases that differentiated between bankruptcy and non-bankruptcy cases when applying the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D): "The concern underlying these cases is clear: if bankruptcy courts are ousted of jurisdiction over a broad class of claims under the § 1821(d) jurisdictional bar, the unity of the bankruptcy process may be fractured and some bankruptcy-related claims would be determined, at least in the first instance, by FDIC administrative tribunals, which (it is argued) have little expertise in bankruptcy matters." 56 F.3d at 1401.

FIRREA if the receivership had preceded the commencement of the avoidance action, that language is clearly dicta and the court was not called upon to decide that specific issue.

Other cases have rightly indicated that subjecting a preference claim to inexpert resolution in a non-bankruptcy forum (particularly when preference claims are uniquely bankruptcy causes of action) would be inefficient and lead to non-uniform results. *See, e.g.*, In re Parker N. Am. Corp., 24 F.3d at 1153 (actions to recover preferences are core proceedings "squarely within" bankruptcy courts' subject matter jurisdiction, becomes part of the claims allowance process when RTC files a proof of claim, and is not "susceptible of resolution" through FIRREA claims procedure, as bankruptcy courts have "expertise in determining preference actions, which involve legal matters unique to the Code").

**(c)** **Practical Impact of FDIC-Receiver's Position.** If the FDIC-Receiver's position in its Motion were upheld, the foreseeable effects on bankruptcy cases would be significant, with unanticipated consequences that clearly were not foreseen by Congress and that Congress could not rationally have intended. For example, the following matters routinely encountered and resolved in bankruptcy cases would, under the FDIC-Receiver's view of the law, be relegated to resolution through the claims administration procedures of FIRREA, as they arguably affect or determine rights with respect to assets of a depository institution for which the FDIC as receiver has been appointed:

- objections to claims filed by the FDIC as receiver in bankruptcy cases (presumably the FDIC would pass upon its own claim in the FIRREA claims review process, subject to later district court review, thereby skirting bankruptcy court scrutiny altogether and leading to potentially inconsistent results of similar claims asserted by other creditors);[12]

---

[12] As observed by one court:

> With no authority to allow or disallow FDIC's claims against a bankruptcy debtor, the system falls apart. In a Chapter 7 asset case, for example, no distributions could be made to claims equal to or lower in priority than any unresolved FDIC claims. 11 USC § 726. Similarly, in a Chapter 11 case, our inability to allow a claim by FDIC would make plan confirmation impossible. *See, e.g.*, 11 USC § 1129(a)(9). The only option available in such a situation might well be to dismiss the case under § 1112(b).

(*Footnote continued…*)

- a debtor's obtaining secured financing under Section 364(d) of the Bankruptcy Code that "primed" (i.e. subordinated) the pre-petition lien of a failed bank in receivership;

- a debtor's proposed use, pursuant to Section 363 of the Bankruptcy Code, of cash collateral of the failed bank for which the FDIC is appointed as receiver (an expedited procedure, which would not work well in the extended time period for the resolution of claims under FIRREA);

- an interested party's motion to value under Section 506(a) of the Bankruptcy Code collateral purportedly securing a failed bank's claim held by the FDIC as receiver;

- a trustee's complaint under Rule 7001 of the Federal Rules of Bankruptcy Procedure to determine the validity, extent or priority of a security interest or other lien asserted by the FDIC as receiver against property of the debtor's estate; and

- a debtor's attempt to "cram down," under Section 1129(b) of the Bankruptcy Code, a plan of reorganization adversely affecting a claim of the FDIC as receiver, over the objection of the FDIC as receiver.

BancGroup submits that both FIRREA and the Bankruptcy Code can coexist, with proper deference to both statutes, by acknowledging that a bankruptcy court's exclusive jurisdiction over estate assets includes the power and authority to determine whether an asset is or is not an asset of the estate and to deal with all aspects of that asset (including avoidance of liens thereon) as part of the ordinary bankruptcy administration process. To the extent that claims asserted against the receivership estate for affirmative recovery or seek an adjudication of property that is undisputedly property of the failed bank, the FIRREA claims resolution process can be followed. *See, e.g.*, Freeman, 56 F.3d 1394 (court properly held that obligor's lawsuit for rescission of loan agreement was subject to FIRREA bar); Lloyd v. FDIC, 22 F.3d 335 (1st Cir. 1994) (suit by debtor seeking equitable reformation or cancellation of mortgage

---

All Season's Kitchen, Inc. v. Federal Deposit Ins. Corp. (In re All Season's Kitchen, Inc.), 145 B.R. 391, 400 n.10 (Bankr. D. Vt. 1992)

agreement is a determination of rights with respect to a failed institution's assets and subject to 12 U.S.C. § 1821(d)(13)(D) jurisdictional bar).

        **(d)**        **Bankruptcy Code Contemplates FDIC-Receiver's Participation.**  Sections 365(o) and 507(a)(9) of the Bankruptcy Code expressly contemplate and make provision for the participation of federal financial regulatory agencies, including the FDIC, in bankruptcy cases.

Section 365(o) requires a debtor in a Chapter 11 case immediately to cure any deficit under a commitment by the debtor to a federal depository institutions regulatory agency (such as the FDIC) to maintain the capital of an insured depository institution.  Section 365(o) goes on to provide that a claim for a subsequent breach of a debtor's obligations under such a commitment is entitled to priority under Section 507 of the Bankruptcy Code.  Section 507(a)(9) provides that an allowed unsecured claim based upon a commitment by the debtor of the type referred to in Section 365(o) is entitled to a ninth priority for distributions to unsecured creditors.  In short, the FDIC is brought into the bankruptcy claims administration process by these express provisions in the Bankruptcy Code.

The FDIC-Receiver has vigorously asserted in BancGroup's Chapter 11 case the existence of a commitment on the part of BancGroup to maintain the capital of Colonial Bank.  BancGroup has with equal vigor disputed the FDIC-Receiver's contentions.  After considerable discovery, the matter has been tried and a ruling from the Bankruptcy Court is expected to be forthcoming in the near future.

The alleged claim of the FDIC-Receiver under Sections 365(o) and 507(a)(9) of the Bankruptcy Code has been asserted by the FDIC-Receiver to be an asset of the failed financial institution in receivership, Colonial Bank.  It would be illogical for the Bankruptcy Code to make provision for such claim, but allow a declaration of the validity or not of such a claim to be adjudicated pursuant to FIRREA's claim administration process.  Indeed, the FDIC-Receiver appears not to dispute that proposition given the fact that it has pressed the Bankruptcy Court for an adjudication in its favor.  Just as this alleged asset of the receivership estate is a claim to be resolved in accordance with the Bankruptcy Code and bankruptcy rules, so too must other claims asserted by the FDIC-Receiver against BancGroup be resolved in the bankruptcy forum.  Similarly, disputes over interests in assets to which a colorable

claim is made by a debtor, should first be resolved in the court that is granted under the Bankruptcy Code the exclusive jurisdiction to deal with such issues.

   **(e)**  **Affirmative Defenses.**  There appears to be a consensus among the courts that a debtor may raise an affirmative defense (including a counterclaim in the nature of an affirmative defense) to a claim asserted by the FDIC as receiver.  In re Parker N. Am. Corp., 24 F.3d at 1155-56 (concluding "that the FIRREA claims process does not apply to actions filed in bankruptcy court to recover preferential transfers, at least where the RTC has filed a proof of claim that exceeds the amount sought to be recovered by the debtor.  In so holding, we harmonize the Code and FIRREA and permit bankruptcy courts to determine matters in which they, and not the RTC, have specific expertise");  RTC v. Midwest Fed. Sav. Bank, 4 F.3d 1490, 1496-97 (9th Cir. 1993) (*amended opinion*, 36 F.3d 785, 792) ("The interpretation of Section 1821(d)(13)(D) urged by the RTC… would lead to the patently absurd consequence of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC.") (internal quotations omitted);  National Union Fire Ins. Co., 28 F.3d at 393 (stating that "a defense or an affirmative defense is neither an 'action' nor a 'claim,' but rather is a *response* to an action or a claim, and that therefore defenses and affirmative defenses do not fall under" FIRREA's jurisdictional bar) (emphasis in original);  Tri-State Hotels, 79 F.3d at 715 ("We agree with the Third and Ninth Circuits that true affirmative defenses may still be asserted by Tri-State in the KLI lawsuit.").  In this case, the FDIC-Receiver has asserted numerous claims in BancGroup's Chapter 11 case, through its proofs of claim and otherwise, including the FDIC-Receiver's entitlement to tax refunds and insurance proceeds under policies of insurance in the name of BancGroup.  BancGroup's Claim Objection and Amended Complaint are in direct response to those claims, do not seek affirmative recovery from the FDIC-Receiver and are (or at least in the nature of) affirmative defenses.

**Conclusion**

The FDIC-Receiver seeks to resolve all conflicts resulting from the intersection of FIRREA and the Bankruptcy Code in favor of FIRREA on the asserted grounds that FIRREA trumps the long-standing exclusive jurisdiction of bankruptcy courts over the administration of bankruptcy cases and property of the estate. The conflict can be resolved in a manner that does not cede complete control of this Chapter 11 case to FIRREA's claims administration procedures. Nothing in FIRREA suggests that it displaces the exclusive jurisdiction of bankruptcy courts.

Accordingly, BancGroup respectfully requests that the FDIC-Receiver's Motion be denied.[13]


Dated: July 23, 2010
　　　　　　　　　　　　　　　　　　　　/s/ *Rufus T. Dorsey, IV*
　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff,
　　　　　　　　　　　　　　　　　　　　The Colonial BancGroup, Inc.


　　　　　　　　　　　　　　　　　　　　C. Edward Dobbs, Esq.
　　　　　　　　　　　　　　　　　　　　(Ga. Bar No. 223450)
　　　　　　　　　　　　　　　　　　　　Rufus T. Dorsey, IV, Esq.
　　　　　　　　　　　　　　　　　　　　(Ga. Bar No. 226705)
　　　　　　　　　　　　　　　　　　　　PARKER, HUDSON, RAINER & DOBBS LLP
　　　　　　　　　　　　　　　　　　　　1500 Marquis Two Tower
　　　　　　　　　　　　　　　　　　　　285 Peachtree Center Avenue NE
　　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30303
　　　　　　　　　　　　　　　　　　　　(404) 523-5300
　　　　　　　　　　　　　　　　　　　　(404) 522-8409
　　　　　　　　　　　　　　　　　　　　edobbs@phrd.com
　　　　　　　　　　　　　　　　　　　　rdorsey@phrd.com

---

[13] Irrespective of this Court's disposition of the Motion, it will ultimately be this Court that will decide the issues raised in the Amended Complaint. The FDIC-Receiver's Motion to require that the issues in the Amended Complaint be decided as part of the FIRREA Action is merely part and parcel of the FDIC-Receiver's overarching goal to press to the limits the jurisdiction of its receivership and to establish precedent in this and other cases in furtherance of that end. This goal does not appear to be a new endeavor. *See, e.g.*, In re All Season's Kitchen, Inc., 145 B.R. at 393 n.2 (the "FDIC, frequently a creditor in bankruptcy proceedings, has never, in any proceeding over which we have presided, advanced this novel theory that we have no original subject matter jurisdiction of its claims against a debtor in Bankruptcy… this novel and, we believe, dangerous theory has exploded onto the scene, and has now literally been advanced from the Canadian border to the Mexican border and from coast to coast. This circumstance, especially when we contrast the large volume of cases conceding lack of jurisdiction over claims against with the paucity of cases even addressing the issue of jurisdiction over claims by FDIC against others… persuades us that we are witnessing a regulatory campaign to change the law.").

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served on July 23, 2010, by transmission of Notices of Electronic Filing generated by CM/ECF to persons registered as of issuance of filing and will served by first class mail on the next day upon those counsel listed below:

    DLA Piper LLP (US)
    (Attn: Jeremy R. Johnson, Esq.;
    Michael D. Hynes, Esq.;
    Thomas R. Califano, Esq.)
    1251 Avenue of the Americas
    New York, NY 10020

                                           */s/ Rufus T. Dorsey, IV*
                                           One of the Attorneys for Plaintiff,
                                           The Colonial BancGroup, Inc.