UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

**THE COLONIAL BANCGROUP, INC.,**

**Plaintiff,**

v.

**Case No.  2:10-cv-0410 (MHT)**

**FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver
for Colonial Bank,**

**Defendant.**

**REPLY MEMORANDUM IN FURTHER SUPPORT OF FDIC-RECEIVER'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Michael A. Fritz, Sr.
Fritz & Hughes LLC
7020 Fain Park Drive Suite 1
Montgomery, Alabama  36117
(334) 215-4422

- and -

John J. Clarke, Jr.
Michael D. Hynes
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

Attorneys for the
 Federal Deposit Insurance Corporation
 as Receiver for Colonial Bank

Dated:  July 30, 2010

## Table of Contents

Page

Table of Authorities ......................................................................................................ii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT –  THE AMENDED COMPLAINT SHOULD BE DISMISSED
    FOR LACK OF SUBJECT MATTER JURISDICTION ................................... 4

I.     THE STATUTORY LANGUAGE OF 12 U.S.C. § 1821(d)(13)(D) IS
      CLEAR AND UNAMBIGUOUS ...................................................................... 4

II.    THERE IS NO JURISDICTIONAL CONFLICT BETWEEN FIRREA
      AND FEDERAL BANKRUPTCY LAW .......................................................... 9

III.   THE DEBTOR'S POLICY ARGUMENTS ARE MERITLESS ................................... 14

CONCLUSION.......................................................................................................... 16

## Table of Authorities

Page

Cases

*All Season's Kitchen, Inc. v. F.D.I.C. (In re All Season's Kitchen, Inc.),*
   145 B.R. 391 (Bankr. D. Vt. 1992) ....................................................................9

*American First Fed., Inc. v. Lake Forest Park, Inc.,*
   198 F.3d 1259 (11th Cir. 1999) ..............................................................2, 4, 8

*Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.),*
   141 B.R. 578 (Bankr. D.N.J. 1992) ..................................................................12

*Bank United v. Manley,*
   273 B.R. 229 (N.D. Ala. 2001) ........................................................................11

*Blachy v. Butcher,*
   221 F.3d 896 (6th Cir. 2000) ...........................................................................11

*Colonial BancGroup, Inc. v. F.D.I.C.,*
   No. 2:10-cv-0198 (MHT) (M.D. Ala.)................................................................2

*Connecticut Nat'l Bank v. Germain,*
   503 U.S. 249 (1992)...........................................................................................4

*Consumer Prod Safety Comm'n v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980)...........................................................................................4

*F.D.I.C. v. Purcell (In re Purcell),*
   150 B.R. 111 (D. Vt. 1993)................................................................................9

*Ga. Dep't of Rev. v. Webster (In re Security Bank Corp.),*
   No. 5:10-mc-0003 (CAR), 2010 U.S. Dist. LEXIS 58401 (M.D. Ga. June 14, 2010).............8

*Gozlon-Peretz v. United States,*
   498 U.S. 395 (1991)........................................................................................13

*Harker v. Wells Fargo Bank, N.A. (In re Krause),*
   414 B.R. 243 (Bankr. S.D. Ohio 2009).............................................................11

*Hassett v. F.D.I.C. (In re CIS Corp.),*
   140 B.R. 351 (S.D.N.Y. 1992)

*In re The Colonial BancGroup, Inc.,*
   No. 2:10-cv-0409 (MHT) (M.D. Ala.)................................................................3

Page

*Landmark Land Co. v. O.T.S.,*
   948 F.2d 910 (5th Cir. 1991) ................................................13

*McCarthy v. F.D.I.C.,*
   348 F.3d 1075 (9th Cir. 2003) ..........................................7, 9

*National Union Fire Ins. v. City Sav. FSB,*
   28 F.3d 376 (3d Cir. 1994)...........................................5, 8, 12

*Noletto v. Nationsbanc Mortgage Corp. (In re Noletto),*
   244 B.R. 845 (Bankr. S.D. Ala. 2000) ............................10, 11

*Parker N. Am. Corp. v. R.T.C. (In re Parker N. Am. Corp.),*
   24 F.3d 1145 (9th Cir. 1994) ...........................................7, 8

*Rosa v. R.T.C.,*
   938 F.2d 383 (3d Cir.),
   *cert. denied,* 502 U.S. 981 (1991) ........................................4

*Sharpe v. F.D.I.C.,*
   126 F.3d 1147 (9th Cir. 1997) ..............................................7

*Smith v. McClesky (In re Bay Vista of Virginia, Inc.),*
   394 B.R. 820 (Bankr. E.D. Va. 2008).....................................11

*Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.),*
   Civ. A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996).......................8, 13

Statutes and Rules

11 U.S.C. § 327.................................................................1, 10

11 U.S.C. § 362....................................................................14

12 U.S.C. § 1818(i)(1) ............................................................13

12 U.S.C. § 1821(d)(13)(D)................................................. *passim*

12 U.S.C. § 1821(j) ...............................................................14

28 U.S.C. § 1334........................................................1, 10, 11, 13

Page

28 U.S.C. § 1409 ..............................................................................................................11

28 U.S.C. § 1452 ..............................................................................................................11

Fed. R. Civ. P. 12(b)(1)..................................................................................................1, 3

Other Authorities

Black's Law Dictionary 38 (6th ed. 1991) .........................................................................8

H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418,
     *reprinted in* 1989 U.S.C.C.A.N. 86 .......................................................................12

Defendant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this reply memorandum of law in further support of its motion to dismiss the amended complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

In its response to the FDIC-Receiver's motion to dismiss, plaintiff The Colonial BancGroup, Inc. ("BancGroup" or the "Debtor") asks this Court to establish an unsupportable rule of law that would eviscerate the statutory exclusivity of the FDIC receivership claims process in the case of bankrupt holding companies. *See* Opp. at 14 (seeking an opinion "acknowledging that a bankruptcy court's exclusive jurisdiction over estate assets includes the power and authority to determine whether an asset is or is not an asset of the estate"). The Debtor premises this outlandish request on its assertion of a purported conflict between federal bankruptcy law and the Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), that, in fact, does not exist.

Contrary to the Debtor's arguments, federal bankruptcy law recognizes that bankruptcy courts' jurisdiction is shared with other courts – including state courts – when debtors bring actions asserting ownership over disputed assets. *See* 28 U.S.C. § 1334(b) (district courts "shall have original *but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11") (emphasis added). In contrast, FIRREA explicitly provides that such disputes may proceed only through the receivership claims process whenever, as here, a claimant is "seeking a determination of rights with respect to the assets" of a failed bank, 12 U.S.C. § 1821(d)(13)(D)(i). The Debtor barely mentions this provision of the statute in its arguments and fails even to cite, much less attempt to distinguish, the Eleventh Circuit's

controlling decision in *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259 (11th Cir. 1999), where the court of appeals recognized that FIRREA divests *all courts* of subject matter jurisdiction over such claims or actions (as well as others that are delineated in the statute). *See id.* at 1263.

Similarly, the Debtor never addresses the many decisions cited by the FDIC-Receiver holding that declaratory judgment actions, such as this one, are among the actions over which *all courts* have been divested of subject matter jurisdiction under FIRREA. There is no bankruptcy exception to FIRREA's statutory exclusivity. To the contrary, the statutory directive that "*no court* shall have jurisdiction" over enumerated claims or actions unquestionably extends to the bankruptcy courts as much as any other court. *See* 12 U.S.C. § 1821(d)(13)(D) (emphasis added). Nor is there any way to justify a judicially crafted exception to this statutory bar for bankrupt holding companies. Not only would such an exception contradict the express statutory language Congress used in creating FIRREA's exclusive claims process, but it also would conflict with congressional intent, in establishing that framework, to minimize the burden imposed on the FDIC as receiver for failed banks.

Finally, the spurious policy arguments advanced by the Debtor in its opposition brief overlook the context of this case entirely. The Debtor brought this declaratory judgment action in the bankruptcy court *one day before* it filed its FIRREA action seeking a *de novo* determination from this Court with respect to its disallowed receivership claims. *See Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.) (the "FIRREA Action"). In its complaint in the FIRREA Action, the Debtor asserts the identical claims against the FDIC-Receiver to tax refunds and insurance proceeds for which it purports to seek declaratory relief here. The Debtor does not deny that its purpose in filing this declaratory judgment action was to

attempt to lodge jurisdiction in the bankruptcy court over matters that the Debtor knew would be raised in a district court action it planned to file against the FDIC-Receiver *the next day*, which was the statutory deadline for doing so.

Such obvious forum shopping hardly provides a basis for the judicial revision of an unambiguous statutory mandate.  The Debtor will not be deprived of any right to prosecute its disallowed receivership claim if this action is dismissed for lack of subject matter jurisdiction. Nor will such a ruling prevent the Debtor from pursuing its objection to the FDIC-Receiver's protective proof of claim in the Debtor's bankruptcy case, which also remains pending before this Court.  *See In re The Colonial BancGroup, Inc.*, No. 2:10-cv-0409 (MHT) (M.D. Ala.).

Dismissal of this action is not only appropriate, it is required by law.  The complaint therefore should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## ARGUMENT

## THE AMENDED COMPLAINT SHOULD BE DISMISSED
## FOR LACK OF SUBJECT MATTER JURISDICTION

**I.    THE STATUTORY LANGUAGE OF 12 U.S.C. § 1821(d)(13)(D)
IS CLEAR AND UNAMBIGUOUS**

"The starting point for interpretation of a statute is the language of the statute itself."

*Consumer Prod Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  When, as here,

the language of a statute is unambiguous, "judicial inquiry is complete."  *Connecticut Nat'l Bank*

*v. Germain*, 503 U.S. 249, 254 (1992).

The statute at issue on this motion is the jurisdictional bar provision of 12 U.S.C.

§ 1821(d)(13)(D), which provides:

> (D)    **Limitation on judicial review**
>
> Except as otherwise provided in this subsection, no court shall
> have jurisdiction over –
>
> (i)    any claim or action for payment from, or any action
> seeking a determination of rights with respect to, the assets of any
> depository institution for which the Corporation has been appointed
> receiver, including assets which the Corporation may acquire from itself
> as such receiver; or
>
> (ii)    any claim relating to any act or omission of such institution
> or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).  As discussed in the FDIC-Receiver's opening memorandum of

law, the jurisdictional bar works with FIRREA's claims procedures to impose a "statutory

exhaustion requirement" that is "explicitly jurisdictional."  *Rosa v. R.T.C.*, 938 F.2d 383, 395 (3d

Cir.), *cert. denied*, 502 U.S. 981 (1991) (jurisdictional bar applies to bar all claims that are

subject to resolution through the exclusive claims process).  In a decision never mentioned in the

Debtor's opposition brief, the Eleventh Circuit has agreed.  *See Am. First Fed., Inc. v. Lake*

*Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999) ("There is consensus among the circuits

that all claims that fall into these categories are subject to the exhaustion requirement, whether they are asserted as initial claims or as counterclaims.").

In the Complaint here, the Debtor seeks declaratory relief establishing that it is the owner of certain assets – tax refunds and insurance policy proceeds – and, of necessity, that Colonial Bank *is not* the owner of such assets.  Without question, an action seeking such relief is an "action seeking a determination of rights with respect to[] the assets of [a] depository institution for which the [FDIC] has been appointed receiver," 12 U.S.C. § 1821(d)(13)(D)(i), and such an action is barred by the express terms of the statute unless it is pursued through the receivership claims process.

This is precisely the conclusion that was reached by the Third Circuit in *National Union Fire Ins. v. City Sav. FSB*, 28 F.3d 376, 385 (3d Cir. 1994), where the appellate court recognized that "[n]o reasonable argument can be offered that the plain meaning of the 'any action seeking a determination of rights' language of § 1821(d)(13)(D) does not include complaints requesting declaratory relief."  Although the Debtor cites *National Union* in passing for other propositions, it does not even attempt to explain or distinguish this holding.  The FDIC-Receiver respectfully submits that this is because there is no response.

The Debtor makes no attempt to respond to the authority cited by the FDIC-Receiver establishing that both the disputed tax refunds and the disputed insurance policy proceeds are, as a matter of law, property of the failed bank and not of its bankrupt holding company.  *See* FDIC-Receiver Mem. at 8-10.  In addition, however, the statutory exclusivity of the receivership claims process is demonstrated by the Debtor's own conduct.  It included claims for tax refunds and for the proceeds of insurance policies in its claim filed with the FDIC-Receiver, and both of those

issues also are included in the Debtor's amended complaint in the FIRREA Action.  In the

FIRREA complaint, the Debtor makes the following allegations:

As to tax refunds:

34.     On account of the BancGroup's payment of federal, state and local taxes for the consolidated tax group, BancGroup is entitled to tax refunds in amounts to be determined after obtaining access and opportunity for review of records relating to BancGroup, Colonial Bank and its subsidiaries (the "Tax Refunds").

35.     All Tax Refunds are payable to BancGroup, regardless of whether such refunds are on account of taxes paid or losses incurred by Colonial Bank or its subsidiaries or any of BancGroup's other subsidiaries.

36.     On information and belief, the FDIC-Receiver intends to assert a claim to some or all of the Tax Refunds directly or indirectly from federal, state and other taxing authorities.  Such a claim is contrary to the rights of BancGroup under the Bankruptcy Code and the terms of the Tax Sharing Agreement.  BancGroup therefore asserts a claim against the FDIC-Receiver and Colonial Bank (including its subsidiaries) on account of any such refunded amounts.

37.     BancGroup also has claims against Colonial Bank and its subsidiaries in respect of all or a portion of any Tax Refunds received by Colonial Bank and its subsidiaries and asserts a claim against Colonial Bank and its subsidiaries for any and all such claims.

FIRREA Am. Compl., ¶¶ 34-37.

As to insurance policies:

82.     BancGroup has an ownership interest in a variety of insurance policies.

83.     Certain of BancGroup's insurance policies name BancGroup and its subsidiaries, including Colonial Bank and its subsidiaries, as insured persons.

84.     BancGroup asserts claims against Colonial Bank for Colonial Bank's fair share of premiums paid by BancGroup with respect to such insurance.

85.     BancGroup further asserts the right to recover any proceeds of the insurance policies received by Colonial Bank or the FDIC-Receiver,

including, without limitation, the proceeds of any director and officer
liability policies and any fidelity and crime policy.

FIRREA Am. Compl., ¶¶ 82-85.

By its own filings, therefore, the Debtor has acknowledged that the FDIC-Receiver has

an interest in both of these matters.  By extension, any action in which the Debtor asserts a

competing ownership claim is an "action seeking a determination of rights with respect to[] the

assets of" Colonial Bank, and under the plain language of section 1821(d)(13)(D) such a claim

only may be pursued through the receivership claims process.[1]

Seeking belated justification for its obvious gamesmanship in filing this action, the

Debtor contends that it is entitled to assert a declaratory judgment action as an "affirmative

defense" to the protective proof of claim that was filed by the FDIC-Receiver in its chapter 11

bankruptcy case.  *See* Opp. at 16.   However, although courts have recognized that section

1821(d)(13)(D) does not prohibit a party from asserting affirmative defenses to a claim asserted

---

[1] In one of its many digressions into irrelevant case law, the Debtor discusses cases that
have drawn a distinction between debtors of a failed bank and creditors of a failed bank in
applying section 1821(d)(13)(D).  More recent decisions have rejected this distinction.  *See
McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1077 (9th Cir. 2003) ("The text of § 1821(d)(13)(D)
plainly states that *any* claim or action that asserts a right to assets of a failed institution is subject
to exhaustion.  There is no limitation to creditors, or exclusion of debtors, and that *is*
controlling.") (emphasis in original).  Surprisingly, the Debtor cites *McCarthy* as a decision
recognizing a supposed "creditor/debtor distinction for FIRREA applicability," *see* Opp. at 11,
when in fact the Ninth Circuit in that decision held *precisely the opposite*.  *See  McCarthy*, 348
F.3d at 1079-80 (noting that "[o]ther circuits have uniformly held that debtors' actions are
subject to FIRREA exhaustion" and joining those other courts).  In *McCarthy*, the Ninth Circuit
also strictly limited to their specific facts its earlier decisions in *Sharpe v. F.D.I.C.*, 126 F.3d
1147 (9th Cir. 1997) and *Parker N. Am. v. R.T.C. (In re Parker N. Am. Corp.)*, 24 F.3d 1145 (9th
Cir. 1994), both of which earlier Ninth Circuit decisions the Debtor purports to rely upon without
informing the Court of this subsequent history.  *See McCarthy*, 348 F.3d at 1077-79.  In any
event, in this case the Debtor itself claims to be a creditor of the failed bank and it has filed a
receivership claim to that effect.  None of the cases cited by the Debtor permit a claimant to
transform itself from a creditor into a supposed debtor of a failed bank by recasting its
receivership claims in the form of a declaratory judgment action in an effort to evade application
of the jurisdictional bar.

by the FDIC as receiver for a failed bank, the same courts have recognized that this exception is strictly limited.  *See Am. First Fed.*, 198 F.3d at 1264-65 (discussing case law); *see, e.g., Nat'l Union*, 28 F.3d at 388-89, 392-95 (dismissing declaratory judgment action while allowing affirmative defenses to RTC claim to proceed); *Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, Civ. A. No. 95-1340, 1996 WL 148533, at *7-*9 (D.D.C. Mar. 19, 1996) (jurisdictional bar does not apply to affirmative defenses but does bar counterclaims asserted against the FDIC as receiver).

In *American First Federal*, the Eleventh Circuit explained the distinction:

> We agree with our sister courts that an affirmative defense, that is, "a response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action," Black's Law Dictionary 38 (6th ed. 1991), is not subject to the administrative exhaustion requirement of Section 1821(d)(13)(D). However, a court must look beyond the nomenclature of a request for relief to ascertain whether it is a true affirmative defense or is, in actuality, a claim requiring exhaustion as a prerequisite to jurisdiction.  Whether a request for relief is titled an affirmative defense or a counterclaim is not dispositive to the question of subject matter jurisdiction.  *The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by Section 1821(d)(13)(D), that is, whether the assertion is in reality a claim against the assets or actions of the failed institution or the RTC as receiver.*

193 F.3d at 1264-65 (emphasis added).[2]

---

[2] The decision in *Ga. Dep't of Rev. v. Webster (In re Security Bank Corp.)*, No. 5:10-mc-0003 (CAR), 2010 U.S. Dist. LEXIS 58401 (M.D. Ga. June 14, 2010), cited by the Debtor, involved different facts and in any event is not persuasive authority.  The decision did not concern a declaratory judgment action, as here, but instead merely denied a motion to withdraw the reference over an interpleader action that had been filed in bankruptcy court by a state taxing authority against both the FDIC as receiver for a failed bank and its bankrupt holding company. The *Security Bank* court never even mentioned 12 U.S.C. § 1821(d)(13)(D) in discussing subject matter jurisdiction and made no effort to reconcile its reasoning to the explicit jurisdictional prohibition provided in that statute.  Nor did the decision cite or distinguish the Eleventh Circuit decision in *American First Federal* or the many other appellate decisions applying the jurisdictional bar that are discussed here.

For the reasons already discussed, the declaratory relief sought by the Debtor here is, quite obviously, "encompassed by Section 1821(d)(13)(D)" because it does not "attack the FDIC-Receiver's legal right" to bring an action but instead interposes a competing claim to ownership over the assets at issue and, unquestionably, seeks a judicial determination with respect to the assets of Colonial Bank.  The Debtor has expressly asserted in its complaint in the FIRREA Action that the tax refunds and insurance policy proceeds at issue are its property, not the property of the FDIC-Receiver.  *See* FIRREA Am. Compl., ¶¶ 34, 82.  The FDIC-Receiver will show otherwise, but it cannot be said that the Debtor will be deprived of its opportunity to pursue these unfounded assertions within the framework established in FIRREA after this inappropriate declaratory judgment action has been dismissed.[3]

## II.   THERE IS NO JURISDICTIONAL CONFLICT BETWEEN FIRREA AND FEDERAL BANKRUPTCY LAW

Confronted by the unambiguous statutory bar to its declaratory judgment action that is provided in 12 U.S.C. § 1821(d)(13)(D), the Debtor devotes much of its opposition brief to arguments seeking an impermissible judicial modification of the statute for bankruptcy cases.  However, there is no conflict between the FIRREA jurisdictional bar and federal bankruptcy

---

[3]   The Debtor mistakenly relies upon three early decisions construing the FIRREA jurisdictional bar in the context of claims filed by the FDIC against chapter 11 debtors, all of which are premised on the since rejected notion that the jurisdictional bar does not extend to "claims" or "actions" by debtors of failed depository institutions.  *See Parker N. Am. Corp.*, 24 F.3d at 1152 ("We agree with the courts that hold that FIRREA applies only to claims of *creditors* against the RTC . . .") (emphasis in original); *F.D.I.C. v. Purcell (In re Purcell)*, 150 B.R. 111, 114 (D. Vt. 1993) ("it is clear that the intent of the statute is to deal with the claims of *creditors*, not debtors") (emphasis in original); *All Season's Kitchen, Inc. v. F.D.I.C. (In re All Season's Kitchen, Inc.)*, 145 B.R. 391, 397 (Bankr. D. Vt. 1992) ("We find not a scintilla of a suggestion that Congress intended that debtors who owe money to FDIC should have to go through the FIRREA claims determination process").  As already noted, in subsequent appellate decisions the circuits of the United States Court of Appeals, including the Ninth Circuit that had decided *Parker North American*, have "uniformly held that debtors' actions are subject to FIRREA exhaustion."  *McCarthy*, 348 F.3d at 1079.

9

jurisdiction provisions, and there is no need for judicial harmonization of those statutory schemes.

Contrary to the Debtor's contentions, bankruptcy courts do not have exclusive jurisdiction over actions to determine what is property of a debtor's estate. Courts in bankruptcy cases "shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added).[4] The "exclusive" jurisdiction provided under section 1334(e)(1), upon which the Debtor erroneously relies, only grants a debtor's "home court" the "exclusive power to control and distribute property of the estate *without requiring it to determine the extent of property of the estate*." *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845, 853-54 (Bankr. S.D. Ala. 2000) (emphasis added). By comparison, under 28 U.S.C. § 1334(b), the separate task of "determining the extent of property of the estate" is shared by the bankruptcy courts with any other court where jurisdiction can be established. Consequently, a court exercising bankruptcy

---

[4] Section 1334(b) provides:

(b)    Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b) (emphasis added). Section 1334(e), in turn, provides:

(e)    The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1)    of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2)    over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334(e).

jurisdiction "may decline to hear proceedings with unsettled state law issues or issues that would more properly be heard in another forum, without infringing upon its 'exclusive and non-delegable control over an estate within its possession.'"  *Id.* at 852 (citation omitted).

Within this jurisdictional scheme, the "exclusive" bankruptcy court jurisdiction provided for under section 1334(e) represents only a limited *in rem* jurisdiction to control and distribute estate property once it has been brought in to the bankruptcy estate, whether through actions brought in other courts or otherwise.  *Noletto*, 244 B.R. at 853-54; *see also Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000) (following *Noletto*:  "We agree . . . that a bankruptcy court can share its jurisdiction with other courts."); *Bank United v. Manley*, 273 B.R. 229, 247-49 (N.D. Ala. 2001); *Smith v. McClesky (In re Bay Vista of Virginia, Inc.)*, 394 B.R. 820, 829-32 (Bankr. E.D. Va. 2008).[5]

Because 28 U.S.C. § 1334(b) recognizes that bankruptcy courts' jurisdiction is not exclusive for actions seeking a determination that disputed assets constitute property of a debtor's estate, no jurisdictional conflict is raised by the statutory exclusivity of the receivership claims process when a bankrupt debtor is required to proceed through that process.  Further, because bankruptcy courts are accustomed to other courts having jurisdiction over debtors' claims to disputed assets, the jurisdictional exclusivity established by FIRREA poses no threat to the efficiency of bankruptcy administration.

---

[5] In addition, the reading of the bankruptcy jurisdiction provisions that the Debtor's arguments imply would result in numerous other statutory conflicts.  As the bankruptcy court explained in *Noletto*, "an expansive interpretation of § 1334(e) requiring the 'home court' to determine all issues regarding property of the estate would be inconsistent with the bankruptcy venue provisions of 28 U.S.C. § 1409(b) and (d), would render 28 U.S.C. § 1334(c) 'virtually useless,' would give 28 U.S.C. § 1452 'virtually no meaning,' and ultimately 'would leave bankruptcy courts in gridlock.'"  *Harker v. Wells Fargo Bank, N.A. (In re Krause)*, 414 B.R. 243, 254-55 (Bankr. S.D. Ohio 2009) (quoting *Noletto*, 244 B.R. at 852-54) (other citations omitted).

On the other hand, allowing bankruptcy courts to impinge upon the statutory exclusivity created under FIRREA for the receivership claims process would not only contradict the express terms of 12 U.S.C. § 1821(d)(13)(D) but also would be contrary to congressional intent in establishing that exclusive regime. *See Nat'l Union*, 28 F.3d at 388 ("Congress apparently has determined that the societal benefits resulting from the right to bring actions for a determination of rights, including declaratory judgments, are outweighed by the societal benefits resulting from the [FDIC] being able to avoid costly and perhaps unnecessary litigation."); H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214-15 (statutory claims procedure "enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly" while minimizing as much as possible additional burden on the federal courts).

For similar reasons, there is no merit to the Debtor's assertion that bankruptcy courts must be permitted to exercise subject matter jurisdiction in order to determine whether the FIRREA jurisdictional bar applies. Whether or not a "claim" or "action" is subject to the jurisdictional bar can be determined from the unambiguous language of section 1821(d)(13)(D) itself, and allowing a bankruptcy court to entertain an action falling within the scope of the statute, as the Debtor advocates in its opposition brief, *see* Opp. at 14, would eviscerate the exclusivity of the receivership claims process that the jurisdictional bar was enacted to protect. *See Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.)*, 141 B.R. 578, 583 (Bankr. D.N.J. 1992) ("this court finds no merit in Amsave's argument that the RTC must first

prove in this court its ownership interest in the 34 loans before the provisions of FIRREA are invoked.").[6]

Finally, even assuming for the sake of argument there were some statutory conflict between the jurisdictional provisions of 12 U.S.C. § 1821(d)(13)(D) and 28 U.S.C. § 1334, the more specific jurisdictional provision in FIRREA would control. In *Landmark Land Co. v. O.T.S.*, 948 F.2d 910 (5th Cir. 1991), the Fifth Circuit considered a similar question – whether there was a conflict between the bankruptcy jurisdiction provisions and 12 U.S.C. § 1818(i)(1), a jurisdictional provision that is similarly worded to section 1821(d)(13)(D).[7] Construing the two provisions, the *Landmark Land* court held that the specific limitation on jurisdiction set forth in title 12 "trump[ed]" the more general bankruptcy provision of 28 U.S.C. § 1334(b). *Landmark*

---

[6] In a footnote, the Debtor suggests that such a threshold exercise of jurisdiction is what occurred in the district court decision in *Washington Bancorp.*, 1996 WL 148533, at *4. *See* Opp. at 7 n.5. In this instance once again, the Debtor's argument cannot be reconciled with the decision it cites. The court in *Washington Bancorp.* applied the literal terms of section 1821(d)(13)(D), concluding that the statute prohibited claims against the FDIC as receiver for the failed bank in question but did not prevent the plaintiff from asserting claims against the FDIC in its corporate capacity. *See Washington Bancorp.*, 1996 WL 148533, at *5-*9. Similarly, in *Hassett v. F.D.I.C. (In re CIS Corp.)*, 140 B.R. 351, 353 (S.D.N.Y. 1992), also cited by the Debtor, the district court did not decide the issue of subject matter jurisdiction but merely refused to withdraw the issue from the bankruptcy court, which in the district court's view was equally capable of applying section 1821(d)(13)(D) in accordance with its terms.

[7] Section 1818(i)(1) provides:

> (1)     The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831o or 1831p-1 of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order

12 U.S.C. § 1818(i)(1).

*Land*, 948 F.2d at 912 (quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) ("[a] specific provision controls over one of more general application.")).  The same conclusion would also apply with respect to section 1821(d)(13)(D).[8]

## III.   THE DEBTOR'S POLICY ARGUMENTS ARE MERITLESS

The application of section 1821(d)(13)(D) in accordance with its literal terms to dismiss the Debtor's declaratory judgment action will not, as the Debtor contends, have "unanticipated consequences that clearly were not foreseen by Congress and that Congress could not rationally have intended."  *See* Opp. at 13.

In reciting the "parade of horribles" that it asserts would flow from such a dismissal decision, the Debtor never mentions that it filed this declaratory judgment action in the bankruptcy court the day before filing its complaint in this Court asserting claims against the FDIC-Receiver under FIRREA.  It also overlooks the fact that on the same day, the Debtor filed an objection to the FDIC-Receiver's proof of claim in the bankruptcy court and, hours later, filed yet another declaratory judgment action against the FDIC-Receiver in that court concerning certain disputed real property.

There should be no doubt that the purpose behind the Debtor's last-minute bankruptcy court filings was to try to lodge jurisdiction over its disputes with the FDIC-Receiver in that court before it began an action *in this Court* under FIRREA, which the Debtor knew had to be filed no later than the next day.  Contrary to the Debtor's arguments, the Debtor's desire to

---

[8]   The Debtor's discussion of case law construing the automatic stay provided for under 11 U.S.C. § 362 and the anti-injunction provision of 12 U.S.C. § 1821(j) reflects another digression into an irrelevant legal issue.  *See* Opp. at 8 & n.6.  Subject matter jurisdiction does not exist over the Debtor's declaratory judgment action because of the express provisions of 12 U.S.C. § 1821(d)(13)(D).  That issue has no bearing on the automatic stay provided for under section 362 of the Bankruptcy Code.

litigate in its favored forum does not raise any policy issue that "Congress could not rationally have intended" when it enacted 12 U.S.C. § 1821(d)(13)(D).

The bankruptcy courts have operated without interruption since FIRREA was enacted in 1989, even as the various Circuits of the United States Court of Appeals have construed the jurisdictional bar strictly in accordance with the plain language of section 1821(d)(13)(D). Bankruptcy courts will continue to operate, as they have done for the past 21 years, after this declaratory judgment action is dismissed for lack of subject matter jurisdiction.  Even after such a dismissal, the FIRREA Action and the Debtor's objection to the FDIC-Receiver's protective proof of claim will provide the Debtor a forum to litigate its assertions against the FDIC-Receiver.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and for the reasons set forth in its initial memorandum of law in support of this motion, the FDIC-Receiver respectfully submits that the Complaint should be dismissed for lack of subject matter jurisdiction.

Dated:  Montgomery, Alabama
       July 30, 2010

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz & Hughes LLC
7020 Fain Park Drive Suite 1
Montgomery, Alabama  36117
(334) 215-4422

- and -

John J. Clarke, Jr.
Michael D. Hynes
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
(212) 335-4500

Attorneys for the
 Federal Deposit Insurance Corporation
 as Receiver for Colonial Bank